## CRAIG *v.* MAGEE.*

*(Circuit Court, E. D. Pennsylvania.* October 25, 1881.)

CHARTER-PARTY — AUTHORITY OF MASTER IN HOME PORT — RATIFICATION OF MANAGING OWNER NECESSARY — WHEN SILENCE NOT A RATIFICATION.

A ship-broker at the home port of a vessel, where her managing owner resides, cannot bind the owners by a charter-party executed upon the mere authority of a telegram from the master, and without consulting the managing owner; nor will the silence of the managing owner, after notice, operate as a ratification if such notice contained an incorrect statement of the facts.

This was a libel by John F. Craig against John Magee and others, owners of the schooner Elizabeth Magee, to recover as damages for breach of charter-party the difference between the freight therein stipulated for and the ruling freight at the point from which the vessel was to sail. The facts as shown by the testimony were as follows:

On March 1, 1876, Hugh Magee, the master of the vessel, which was then lying at Key West, Florida, telegraphed to H. L. Gregg & Co., ship-brokers of Philadelphia, as follows: "Can you offer lumber, Fernandina up; fair freight; Philadelphia preferred." To which H. L. Gregg & Co. replied: "No lumber freights; better sail Matanzas; consign Frank Genovar; get mol." Later in the same day Gregg & Co. sent a second dispatch as follows: "Have closed you, Lueder & Co., account Craig, Matanzas; molasses; Philadelphia or New York. Telegraph confirmation." To which the master replied: "I accept sail to-morrow advise John Magee all well." John Magee was the managing owner of the vessel, and resided at Philadelphia. This fact was known to Gregg & Co., but without consulting him they, upon receipt of the telegram from the master, signed as agent for the owners a charter-party with John F. Craig for a voyage from Matanzas to the Delaware break-water, with a cargo of molasses, at two and three-eighths dollars per 110 gallons, which was less than the customary rate at Matanzas at that time. Afterwards they wrote to John Magee as follows:

PHILADELPHIA, March 3, 1876.

*Capt. John Magee*—DEAR SIR: We received a telegram from Capt. Magee, from Key West, inquiring after a lumber freight north, but there was nothing that we could offer him that would pay, as $5 from Brunswick and $7.50 from Pensacola was all that could be got. *We telegraphed him we could close him to load at Matanzas for either Philadelphia or New York, at $2⅜ for molasses, and that we should hold it subject to his confirmation.*

We received his reply this afternoon accepting it, and we therefore closed it at once. He says he shall sail immediately for Matanzas. Letters sent care of Messrs. Lueder & Co. would reach him.

Very truly yours,
H. L. GREGG & Co.

*Reported by Frank P. Prichard. Esq., of the Philadelphia bar.

John Magee, owing to absence from the city, did not receive this letter until about a week after it was written, but he then called on Gregg & Co. He expressed the opinion that Gregg & Co. had assumed a responsibility, but he was not shown the telegrams, and nothing more passed between the parties. A few days afterwards, however, he received word from the master that on the very day the telegram had been sent to Gregg & Co. the vessel had been so injured in a gale that she was obliged to return home in ballast. John Magee immediately notified Gregg & Co. of this fact. Subsequently this libel was filed by Craig. The owners defended on the ground that Gregg & Co. had no authority to make the charter.

The district court entered a decree dismissing the libel, whereupon libellant appealed.

*H. G. Ward* and *Henry Flanders*, for appellant.

*Geo. P. Rich* and *J. Warren Coulston,* for appellee.

McKENNAN, C. J. I concur with the learned judge of the district court in his dismissal of this libel. Presumptively, H. L. Gregg & Co., as well as the libellant, knew the extent and limitations of the authority of the master of the Elizabeth Magee, and that, as she was a Philadelphia vessel, and her managing owner resided there, it was essential to the validity of any charter-party made by them at her home port, ostensibly in her behalf, and accepted by the master, that it should be ratified by the managing owner. And it was alike essential to the efficacy of such ratification that the person who assumed to act for the vessel should make a full disclosure and a correct statement of all the facts touching the charter, within his knowledge, to the managing owner. The letter of March 3, 1876, by H. L. Gregg & Co., the ship-brokers, to John Magee, the managing owner, may be regarded as written with this intent. The owner did not answer it, and hence it is alleged that he impliedly ratified the contract of which it advised him. But did it state truthfully the facts which were known to the writers? It did not. It stated that the master had accepted a contract for freight from Matanzas to Philadelphia or New York for $2⅜ for molasses. The master, however, had not been informed of the rate of freight proposed, and so had not "accepted" it.

Whatever legal import, then, the silence of the managing owner may have as a presumptive approval of the charter, he was entitled to correct information as to what the master of the vessel had done, and a material misstatement in this regard would give him the right to recede from his implied ratification of the charter. This he did within a reasonable time afterwards, because the libellant knew on the fifteenth of March that the contract was disclaimed, and that the vessel was coming home. Nor has the libellant any equity which would

preclude the exercise of this right. He was not induced to do anything, and had done nothing, before he knew of the managing owner's disclaimer, by which he suffered any loss. The only loss he has sustained is the loss of his bargain, and for this the respondents cannot, under the circumstances, be held responsible.

The libel is dismissed, with costs.